# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF MISSOURI
# EASTERN DIVISION

| | |
|---|---|
| CMT, LLC. | ) |
| | ) |
| Plaintiff, | ) |
| | ) Case No. |
| vs. | ) |
| | ) |
| BJC HEALTH SYSTEM | ) |
| | ) |
| Defendant. | ) |

## COMPLAINT

COMES NOW plaintiff CMT, LLC., by and through its counsel, and for its cause of action against Defendant BJC Health System, states the following.

## Parties

1. Plaintiff CMT, LLC (hereinafter "CMT") is and was at all times relevant herein a corporate entity organized and existing pursuant to the laws of the State of Missouri and doing business in the City of St. Louis.

2. Defendant BJC Health System (hereinafter "BJC") is a non-profit corporate entity organized and existing pursuant to the laws of the State of Missouri and doing business in the City of St. Louis, which operates under the fictitious name BJC Healthcare.

## Jurisdiction and Venue

3. The court has jurisdiction over this matter pursuant to 28 U.S.C Section 1331, and 42 U.S.C. Section 1981.

4. Venue is proper under 28 U.S.C 1391 (b)(1) because the defendant is deemed to reside in the District and pursuant to 28 U.S.C. 1391 (c). Venue is also proper because the events giving rise to this action occurred in this District.

**FACTUAL BACKGROUND**

5. In 2015, Defendant BJC began soliciting minority and women owned business enterprises ("M/WBEs") to participate as contractors and vendors in BJC's $1.5 billion construction project known as the Campus Renewal Project. With the Campus Renewal Project, BJC sought to be neither an active nor passive participant in the discrimination against minorities and women that is endemic to the construction industry in the marketplace in which BJC operates (as evidenced by, among other things, disparity studies), namely, the St. Louis area construction industry. BJC actively solicited and induced women and minority firms to participate in the Campus Renewal Project by directly and indirectly promising and assuring them that not only would they not be subjected to discriminatory practices, such as their being treated differently than white male contractors, that BJC would provide the support services to enable M/WBE firms to increase their capacity by virtue of their working on the Campus Renewal Project.

6. Plaintiff CMT is owned and operated by an African-American female, Cory A. Elliott, and is certified as a minority and woman owned business enterprise ("M/WBE") with various governmental entities and agencies, including the City of St. Louis. CMT has been in existence since 2012, having been formed by Ms. Elliott based on her previous extensive experience in commercial contracting as an executive with a major corporation. Prior to contracting on the Campus Renewal Project, CMT had performed major and notable roofing contract jobs such as the St. Louis Lambert Airport copper dome project and the Laclede Gas roof project.

7. In seeking minority and women owned construction firms for the Campus Renewal Project, Defendant BJC induced Plaintiff CMT into entering into a $747.000.00 subcontract with RSS Construction - which unbeknownst to Plaintiff had been given a $1.5 million contract by BJC to do the exact same job RSS subcontracted to CMT - to provide the roof on the south Children's Tower - known as the "SLCH South Tower – Roofing Project - through, among other things, having Plaintiff participate in a five-year BJC sponsored construction management program, and providing Plaintiff assurance that the M/WBE monitoring mechanism established by BJC, including its pay dispute resolution process, would be fairly enforced to prevent Plaintiff

from being discriminated against. The standard AIA contract executed by and between CMT and RSS named Defendant BJC as the Owner with whom RSS was contracting.

Prior to the work being performed on the south Children's Tower, RSS had performed the roofing work on the north Children's Tower – a substantially larger project than the south tower – and had no M/WBEs performing as subcontractors on that project.

8. Plaintiff CMT commenced working on the SLCH South Tower Roofing project in October 2016 – after a five month costly delay due to no fault of Plaintiff – and completed the job of placing the roofs on the south Children's Tower, despite experiencing further costly scheduling delays and other costly construction issues due to no fault of CMT – when in March 2017, it was forced to abandon performing any further work because of BJC's failure to remedy the discrimination CMT faced in not being paid for work performed in the same manner as white male contractors were paid for work performed.

9. In the course of seeking to have BJC live up to its representation to provide M/WBEs support services, CMT discovered that RSS was awarded by BJC a contract to perform the south tower project in the amount of $1.5 million – having the exact same south tower project scope of work as the scope of work in the $747,000.00 subcontract awarded by RSS to Plaintiff CMT. In other words, BJC paid the white male owned construction firm, RSS, $1.5 million to do the exact same work that the black woman owned firm, CMT, was paid half that amount to do. BJC has refused to provide the documentation requested concerning the $753,000 extra paid to RSS by BJC for the south tower roofing project.

10. BJC has engaged in a pattern of race discrimination by structuring relationships between minority firms and white male owned firms, such as between CMT and RSS, that are designed to benefit the white contractor and detrimental to the minority firms.

11. Despite the recommendation of the firm that BJC contracted with to oversee its M/WBE process and ensure and assure M/WBEs that they would not on the Campus Renewal Project be subjected to the known discriminatory practices in the industry, BJC has refused to follow the recommendation of this firm with respect to addressing the discrimination CMT is being subjected to in not being given the compensation it is due.

12. During the course of Plaintiff seeking a resolution with BJC, Plaintiff was contacted by the media and provided to it information about the improper construction work – uneven floors – in the two children's towers. It is Plaintiff's understanding from information relayed that BJC is engaged in retaliation against Plaintiff for making this information known to persons outside BJC.

## COUNT I
### Violation of Federal Law

13. This court has jurisdiction pursuant to 42 U.S.C. Section 1981.

14. Plaintiff realleges and incorporates herein by reference paragraphs 1 through 12 of this Complaint.

15. The Defendant violated 42 U.S.C. Section 1981 by denying Plaintiff CMT the same contractual rights and benefits afforded to white male construction firms, including denying Plaintiff the $1.5 million contract fee paid the white firm, RSS, for the same job, and subjecting Plaintiff to a racially hostile environment in which to operate and conduct its business.

16. The Defendant has acted deliberately and with indifference to Plaintiff's rights.

17. Defendant's actions have caused Plaintiff damages, including emotional distress and the loss of business profits.

## COUNT II
### Misrepresentation and Fraud

18. This court has jurisdiction pursuant to its power of pendent jurisdiction.

19. Plaintiff realleges and incorporates herein by reference paragraphs 1 through 12 of this Complaint.

20. The Defendant induced Plaintiff to enter into a contract with RSS based upon Defendant's representations about the bids and costs for the south tower project, and

representations with respect to providing support services to M/WBEs, and protecting them from the explicit and implicit discriminatory practices of the construction industry.

21. In reliance on Defendant's promises, Plaintiff entered into the contract with RSS.

22. Plaintiff has been defrauded by Defendant of $753,000.00, the difference between the amount paid by Defendant to RSS to perform the contract work performed by Plaintiff on the south Children's Tower ($1.5 million) and the subcontract amount paid by RSS to Plaintiff ($747,000.00) to perform that exact same scope of work.

23. The Defendant has acted deliberately and with indifference to Plaintiff's rights.

24. Defendant's actions have caused Plaintiff damages, including emotional distress and the loss of business profits.

## COUNT III

### Whistleblower Retaliation Violation

25. This court has jurisdiction pursuant to its power of pendent jurisdiction.

26. Plaintiff realleges and incorporates herein by reference paragraphs 1 through 12 of this Complaint.

27. The Defendant has retaliated against Plaintiff for Plaintiff blowing the whistle on the uneven floor construction in the children's towers, causing public embarrassment and humiliation to BJC.

28. The Defendant has acted deliberately and with indifference to Plaintiff's rights.

29. Defendant's actions have caused Plaintiff damages, including emotional distress and the loss of business profits.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff prays this Court for a judgment and order against Defendant as to Counts I through III to (a) immediately cease and desist the discriminatory practices occurring on the BJC Campus Renewal Project; (b) award Plaintiff actual damages of Five-Million Dollars ($5,000,000.00), and punitive damages according to proof; (c) award attorney's fees, the costs

of Court, prejudgment and post judgment interest allowed by law, and for such additional relief as this Honorable Court deems just and proper under the circumstances.

                                                Respectfully submitted,

**S/ *Eric E. Vickers***

Eric E. Vickers #31784
401 North Newstead, Ste. 1N
St. Louis, Mo. 63108
(314) 420-8700  (314) 875-0447 fax
eric_vickers@hotmail.com
Attorney for Plaintiff